IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORGE RAMIREZ MARTINEZ, | ) |
| Petitioner, | ) ) ) |
| | ) No. 25-cv-12029 |
| v. | ) ) Judge Andrea R. Wood |
| KRISTI NOEM, et al., | ) ) |
| Respondents. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jorge Ramirez Martinez, a citizen of Mexico, entered the United States without inspection more than 24 years ago and has resided here ever since. On October 1, 2025, Ramirez Martinez was arrested and taken into custody by U.S. Immigration and Customs Enforcement ("ICE"). In line with a recent decision issued by the Board of Immigration Appeals ("BIA"), *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025), Ramirez Martinez has been detained without the opportunity to seek release by means of an individualized bond hearing before an Immigration Judge. For that reason, he has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1), asking the Court to declare that Respondents' actions violate the applicable provisions of the Immigration and Nationality Act ("INA") and his rights under the Due Process Clause of the Fifth Amendment, and order Respondents to grant him a bond hearing for his removal proceedings. For the reasons that follow, Ramirez Martinez's petition is granted.

**BACKGROUND**

Ramirez Martinez is a native and citizen of Mexico, who entered the United States without inspection in 2001 and has remained in the country since then. (Pet. ¶¶ 19, 21, Dkt. No. 1.) Prior to his arrest, Ramirez Martinez resided in Chicago, Illinois, with his wife and three U.S. citizen children, and he served as his family's primary source of financial support. (*Id.* ¶ 20.) He

has no criminal record. (*Id.* ¶ 3.) On October 1, 2025, Ramirez Martinez was arrested in Chicago and taken into custody by ICE. (*Id.* ¶ 5.) Initially, he was detained at the Broadview Detention Center in Broadview, Illinois. (*See id.* ¶ 7.) Two days later, he was issued a Notice to Appear for removal proceedings on October 22, 2025, pursuant to 8 U.S.C. § 1229a. (Resp. to Pet. Ex. 1 at 1, Dkt. No. 10-1.) Since his initial detention, Ramirez Martinez has been relocated to the Clay County Detention Center in Brazil, Indiana. (Status Report at 1, Dkt. No. 7.)

Until recently, the Government has had a longstanding practice of treating aliens taken into custody while already present in the United States as subject to the detention pursuant to the requirements of 8 U.S.C. § 1226. Section 1226(a) provides that detention is discretionary for aliens detained under the provision, so long they do not fall within any of the enumerated categories of "criminal aliens" listed in § 1226(c) for whom detention is mandatory. An alien subject to discretionary detention under § 1226(a) may request a hearing to obtain release on bond. *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1)). However, on September 5, 2025, the BIA issued its decision in *Yajure Hurtado*, in which it held for the first time that all aliens who unlawfully enter the country are ineligible for release on bond. Specifically, the BIA concluded that such aliens are not subject to discretionary detention under § 1226(a) but instead are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Yajure Hurtado*, 29 I&N Dec. at 228–29.

Based on *Yajure Hurtado*, Ramirez Martinez has been deemed ineligible for release while he awaits removal proceedings, and therefore he has been denied a bond hearing before an Immigration Judge. Contending that *Yajure Hurtado* incorrectly interprets the relevant provisions of the INA and that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment, Ramirez Martinez now petitions this Court for a writ of

2

habeas corpus and, specifically, seeks a court order requiring Respondents Kristi Noem, in her official capacity as Secretary of Homeland Security, and Russell Hott, in his official capacity as Field Office Director of ICE's Chicago Field Office, to provide him with a bond hearing. At the time he filed his habeas petition, Ramirez Martinez was detained at the Broadview Detention Center, which is located within the Northern District of Illinois.

## DISCUSSION

A district court may grant a writ of habeas corpus to a petitioner who demonstrates that "[h]e is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). Here, Ramirez Martinez challenges his detention only insofar as he has been deemed categorically ineligible for a bond hearing. In particular, he contends that he has been improperly treated as subject to mandatory detention under § 1225(b)(2)(A) when, in fact, his detention is discretionary under § 1226(a). Ramirez Martinez further argues that Respondents' refusal to provide him with a bond hearing under § 1226(a) violates his Fifth Amendment right to due process. Before considering the merits of Ramirez Martinez's habeas claims, however, the Court first addresses Respondents' arguments that this Court lacks jurisdiction to hear those claims, that the claims are not ripe for consideration, that Ramirez Martinez should be required to exhaust his claims administratively before seeking a writ of habeas corpus, and that the Secretary of Homeland Security is improperly named as a Respondent.

### I. Jurisdiction

According to Respondents, three provisions of the INA independently preclude this Court from exercising jurisdiction over Ramirez Martinez's habeas petition. First, Respondents invoke 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this

3

chapter." The Seventh Circuit has explained that § 1252(g) "does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). Here, Ramirez Martinez does not challenge any of those three specified actions; instead, he challenges only the denial of a bond hearing. And "nothing in § 1252(g) precludes review of the decision to confine" an alien. *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). Indeed, numerous courts in this Circuit have considered similar habeas claims and concluded that § 1252(g) did not divest their jurisdiction. *E.g.*, *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *3 (N.D. Ill. Oct. 16, 2025); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *1–2 (S.D. Ind. Sept. 22, 2025). This Court concurs with that view and therefore rejects Respondents' contention that § 1252(g) deprives it of jurisdiction over Ramirez Martinez's claims.

Next, Respondents assert that this Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9). That provision states with respect "to review of an order of removal" as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

However, § 1252(b)(9) does not preclude the exercise of jurisdiction over questions about whether "certain statutory provisions require detention without a bond hearing." *Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018) (plurality opinion);[1] *see also Dep't of Homeland Sec. v.*

---

[1] While the *Jennings* decision's jurisdictional analysis was joined only by a plurality of Justices (a majority of Justices joined the rest of the opinion), the three Justices in dissent expressed the view that jurisdiction was "unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to

4

*Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (internal quotation marks omitted)). And that is the crux of Ramirez Martinez's challenge here. Accordingly, § 1252(b)(9) presents no jurisdictional bar.

Finally, given that Ramirez Martinez argues that the decision to detain him pending a decision on his removal is discretionary rather than mandatory, Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) applies. In particular, § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security." But that provision does not preclude this Court's jurisdiction because Ramirez Martinez "does not challenge a discretionary bond denial by an [Immigration Judge] under § 1226(a). He has not been permitted such a hearing **because** Respondents maintain that he is mandatorily detained under § 1225 instead." *Ochoa Ochoa*, 2025 WL 2938779, at *4; *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("The aliens here . . . do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the . . . detention statute. And the extent of that authority is not a matter of discretion.").

In short, the Court finds that none of the statutory provisions cited by Respondents preclude it from exercising jurisdiction over the instant petition.

---

review of an order of removal under [§ 1252(a)(1)].'" *Jennings*, 583 U.S. at 355 (Breyer, J., dissenting) (quoting 8 U.S.C. § 1252(b)). Thus, a total of six Justices took the position that § 1252(b)(9) does not preclude the exercise of jurisdiction over questions concerning detention without a bond hearing.

## II.    Ripeness

Having confirmed its jurisdiction over Ramirez Martinez's habeas petition, the Court turns to Respondents' contention that his challenge is not yet ripe for consideration. In particular, Respondents claim that Ramirez Martinez can only speculate that he will be detained without being provided a bond hearing. The Court disagrees. As Respondents concede, Ramirez Martinez assumes "with good reason . . . that he will not be afforded a bond hearing." (Resp'ts' Opp'n at 3, Dkt. No. 11.) More importantly, Respondents' opposition brief makes clear their position that Ramirez Martinez has no right to a bond hearing because he is subject to mandatory detention under § 1225 based on the BIA's decision in *Yajure Hurtado*. By contrast, Ramirez Martinez contends that detention is discretionary under § 1226(a) and he has a right to a bond hearing. Whether Ramirez Martinez is properly considered as detained under § 1225 or § 1226(a) is a question that became ripe immediately upon his detention.

## III.    Administrative Exhaustion

Rather than reach the merits of Ramirez Martinez's habeas claims now, Respondents contend that this Court should require him first to request a bond hearing and then appeal any denial of that request to the BIA. Where, as here, "Congress has not clearly required exhaustion, sound judicial discretion governs." *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Nonetheless, the general rule calls for "parties [to] exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* (quoting *McCarthy*, 503 U.S. at 144–45). But one instance in which exhaustion will be excused is where "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue." *Id.* at 1016 (internal quotation marks omitted). That is the situation here: the BIA made clear in *Yajure Hurtado* its view that aliens like Ramirez Martinez are subject to mandatory detention and thus ineligible for release on bond, a

6

determination that is binding on all Immigration Judges. Since "the BIA has predetermined the statutory issue" presented in Ramirez Martinez's habeas petition and "there is nothing to indicate the BIA would change its position," the Court will not require him to exhaust his claims administratively. *Gonzalez*, 355 F.3d at 1019 (internal quotation marks omitted).

### IV. Proper Respondent

One final preliminary matter the Court resolves before turning to the merits is whether Kristi Noem, in her official capacity as Secretary of Homeland Security, is properly named as a Respondent. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). Thus, the Supreme Court has held that "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435; *see also Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) ("A century-old line of Supreme Court precedent has defined a habeas petitioner's custodian as the person who has the ***immediate custody*** of the party detained, with the power to produce the body of such party before the court or judge." (internal quotation marks omitted)). At the time of Ramirez Martinez's initial detention at the Broadview Detention Center, his immediate custodian was Russell Hott, then ICE's Chicago Field Office Director. Hott has since been succeeded in that role by Samuel Olson, and the Court therefore substitutes Olson in Hott's place as Respondent pursuant to Federal Rule of Civil Procedure 25(d). Further, because Ramirez Martinez has been relocated and is currently detained at the Clay County Detention Center, the Court has added as a Respondent that facility's Jail Commander, Brandon Crowley. Since Noem is not Ramirez Martinez's immediate custodian, she is dismissed as a Respondent.

7

V.      **Detention Without Bond Hearing**

The Court now turns to the merits of Ramirez Martinez's habeas claims. He contends that his mandatory detention under § 1225(b)(2) is predicated on an incorrect interpretation of the INA. Moreover, regardless of whether his detention is mandatory or discretionary, Ramirez Martinez contends that his detention without a bond hearing violates his Fifth Amendment right to due process. The Court agrees on both fronts.

A.      **Statutory Basis for Detention**

The provisions of the INA governing detention of noncitizens pending removal proceedings are §§ 1225 and 1226. First, under § 1225(a)(1), any "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Relevant here, § 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for a removal proceeding under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). Detention of aliens under § 1225(b)(2)(A) "is mandatory, and the noncitizen is not entitled to a bond hearing." *Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480, at *4 (N.D. Ill. Oct. 21, 2025) (internal quotation marks omitted).

Section 1226(a) sets forth what the Supreme Court has described as the "default rule" for "the process of arresting and detaining [an alien present in the United States] pending their removal." *Jennings*, 583 U.S. at 288. With respect to detaining an arrested alien, § 1226(a) states in relevant part that, "[e]xcept as provided in subsection (c) and pending" a decision on removal, "the Attorney General . . . may continue to detain the arrested alien; and . . . may release the alien

8

on . . . bond" or "conditional parole." 8 U.S.C. § 1226(a).[2] Aliens detained under § 1226(a), are entitled to "receive [a] bond hearing[] at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

As summarized by the Supreme Court, § 1225 "authorizes the Government to detain certain aliens seeking admission into the county," whereas § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Id.* at 289. Under that articulation, the question of whether § 1225 or § 1226 governs Ramirez Martinez's detention would seem straightforward—he has been residing in the United States for over 24 years prior to the Government's initiation of removal proceedings. Indeed, before *Yajure Hurtado*, the Government's longstanding practice was to "apply[] § 1226(a) to inadmissible noncitizens already residing in the country." *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025). Yet the BIA abandoned that previous understanding in *Yajure Hurtado* and held that aliens present in the United States without admission remain applicants for admission subject to mandatory detention pending removal under § 1225(b)(2)(A), even when they have resided in the country for years. 291 I&N Dec. at 220. To resolve the instant habeas petition, the Court must determine which interpretation of the INA's detention provisions is correct.

When interpreting a statue, the Court first looks to its text "to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation marks omitted). "If the statutory language's plain meaning is unambiguous, [the Court's] inquiry ends there." *Id.* In this case, there is no dispute that Ramirez Martinez does not fall within any of the

---

[2] The exception in subsection (c) "carves out a statutory category of aliens who may **not** be released under § 1226(a)," namely, any alien "who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289 (citing 8 U.S.C. § 1226(c)(1)).

9

enumerated categories of criminal aliens for purposes of § 1226(c)'s exception. Ramirez Martinez claims that necessarily means that § 1226(a)'s default rule for aliens present in the United States applies to his detention. Yet Respondents, echoing *Yajure Hurtado*, contend that Ramirez Martinez constitutes an "applicant for admission" within the meaning of § 1225(a)(1), and therefore because he "is not clearly and beyond a doubt entitled to be admitted," he is subject to mandatory detention pending removal proceedings pursuant to § 1225(b)(2)(A).

The Court agrees that Ramirez Martinez is an applicant for admission within the meaning of § 1225(a)(1). As noted above, § 1225(a)(1) deems the designation applicant for admission to include any alien present in the United States who has not been admitted. And being "admitted" for purposes of that provision means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Nonetheless, "in the case of an alien who is an applicant for admission," mandatory detention under § 1225(b)(2)(A) applies only where "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Thus, the critical question is whether an alien like Ramirez Martinez who has long been present in the United States can nonetheless be considered "an alien *seeking* admission."

This Court joins the overwhelming majority of district courts in concluding that an alien who has been residing in the United States for an extended period of time is not "seeking admission" within the meaning of § 1225(b)(2)(A). *E.g.*, *Miguel*, 2025 WL 2976480, at *1 & n.1 (observing the numerous cases in which the district court held that "noncitizens already in the country are properly detained pursuant to § 1226(a) rather than § 1225(b)(2)(A)"). "[M]ost importantly, 'seeking' implies action and [noncitizens] who have been present in the country for

10

years are not actively 'seeking admission.'" *Ochoa Ochoa*, 2025 WL 2938779, at *6; *see also Bait It v. McAleenan*, 410 F. Supp. 3d 874, 879 (N.D. Ill. 2019) ("Congress's 'choice of verb tense' informs 'a statute's temporal reach.'" (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010))). Ramirez Martinez entered this country in 2001 without inspection and, since then, has continuously resided and started a family here. It is wholly implausible to say that Ramirez Martinez is presently seeking "admission"—*i.e.*, "the **lawful entry** of the alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13)(A) (emphasis added).

Moreover, § 1225(b)(2)(A) expressly refers to both an "applicant for admission" and "an alien seeking admission." Congress's use of those two different phrases within the same subsection strongly suggests that it meant to distinguish between an "applicant for admission" and "an alien seeking admission." *E.g.*, *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]e presume differences in language . . . convey differences in meaning."). And under Respondents' interpretation, all "applicants for admission" who are "not clearly and beyond a doubt entitled to be admitted" are subject to mandatory detention under § 1225(b)(2)(A), rendering the "seeking admission" language mere surplusage. *United States v. Feeney*, 100 F.4th 841, 846 (7th Cir. 2024) ("According to the rule against surplusage, we aim to give independent meaning to the entire text so that no part is rendered meaningless.").

Notably, even as Respondents argue that Ramirez Martinez is an applicant for admission for whom detention is mandated under § 1225(b)(2)(A), they do not argue that anything in the plain language of § 1226(a) excludes him from its scope. Yet § 1225(b)(2)(A) and § 1226(a) are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225(b)(2)(A) and eligible for bond under § 1226(a)." *Miguel*, 2025 WL 2976480, at *4. That

11

Ramirez Martinez comfortably fits within the plain language of § 1226(a), while § 1225(b)(2)(A) reaches him only under a strained interpretation of the statutory language, reinforces the conclusion that Ramirez Martinez should be considered detained under the former provision rather than the latter. *See, e.g.*, *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025) (describing the BIA's interpretation of § 1225 as "novel"). The Supreme Court evidently understood that to be the case, given its description of § 1226 as "governing the process of arresting and detaining [a] group of aliens pending their removal," including "aliens who were inadmissible at the time of entry." *Jennings*, 583 U.S. at 288. And until only very recently, the Government's practice was to apply § 1226(a) to such noncitizens. That "longstanding practice of the [G]overnment—like any other interpretative aid—can inform a court's determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (internal quotation marks omitted).

For these reasons, the Court rejects Respondents' contention that § 1225(b)(2)(A) mandates detention for Ramirez Martinez simply because he is a noncitizen who entered the United States without inspection. Instead, the Court adopts the previously uncontroversial (pre-*Yajure Hurtado*) interpretation of § 1225(b)(2)(A) and § 1226(a) in concluding that Ramirez Martinez is detained subject to the requirements of § 1226(a). Accordingly, he is entitled to a bond hearing.

### B. Due Process

The Court further concludes that Ramirez Martinez has a Fifth Amendment due process right to a bond hearing. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Government detention in immigration proceedings may violate that Clause except 'in certain special and narrow nonpunitive circumstances where a

12

special justification outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Padilla v. Noem*, No. 25 CV 12462, 2025 WL 2977742, at *2 (N.D. Ill. Oct. 22, 2025) (quoting *Zadvydas*, 533 U.S. at 690).

Courts in this District apply the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), in determining whether a noncitizen's detention without a bond hearing violates procedural due process. *E.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *7. Under that test, the following factors are balanced: "first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Miguel*, 2025 WL 2976480, at *7 (quoting *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017)). Like other courts in this District that have addressed the question with respect to similarly situated petitioners, this Court finds that all three factors weigh in favor of Ramirez Martinez. *Padilla*, 2025 WL 2977742, at *3; *Miguel*, 2025 WL 2976480, at *7; *Ochoa Ochoa*, 2025 WL 2938779, at *7. First, Ramirez Martinez's "liberty is at stake." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29, 2025). Second, given that he has no criminal record and there is no indication that he poses a danger to others, the risk of erroneous deprivation of his liberty is high. And third, while "the Government has a legitimate interest in the prompt execution of removal orders which detention may facilitate[,] simply holding a bond hearing does not impair that interest." *Miguel*, 2025 WL 2976480, at *7 (internal quotation marks and citation omitted). Consequently, Ramirez Martinez's detention without a bond hearing violates due process.

### VI. Relief

In his habeas petition, Ramirez Martinez requests that the Court order Respondents to schedule a bond hearing for his removal proceedings. The Court finds that such relief is proper. At the bond hearing, Respondents will have the burden of showing by clear and convincing

evidence that Ramirez Martinez poses a risk of flight or a danger to the community such that his detention is necessary. *E.g.*, *Ochoa Ochoa*, 2025 WL 2938779, at *8 ("When granting immigration detainees' habeas petitions, an overwhelming consensus of courts have placed the burden on the [G]overnment to prove by clear and convincing evidence that the detainee poses a danger or flight risk." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Ramirez Martinez's petition for a writ of habeas corpus (Dkt. No. 1) is granted. Within seven days of the entry of this memorandum opinion and order, Respondents shall either (1) provide Ramirez Martinez with a bond hearing pursuant to 8 U.S.C. § 1226(a) or (2) release him from custody under reasonable conditions of supervision. The date of November 13, 2025 for the parties to file a joint status report is stricken and reset for November 21, 2025. The status report due November 21, 2025 shall address Ramirez Martinez's release status, including confirming that he received a bond hearing and stating the result of that bond hearing. As this memorandum opinion and order grants all requested relief, the Clerk is directed to enter Judgment in favor of Ramirez Martinez and administratively close the case on this Court's civil docket.

Dated: November 11, 2025

ENTERED:

_____
Andrea R. Wood
United States District Judge